## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) ) ) | Chapter 7<br>Case No. 10-31309 |
| JOSEPH R. MARTIN JR. and<br>LYNN C. MARTIN, | ) ) ) ) |  |
| Debtors. | ) ) |  |
| MARY MASLAR, | ) ) ) | Adversary Proceeding<br>No. 10-03026 |
| Plaintiff, | ) ) |  |
| v. | ) ) |  |
| JOSEPH R. MARTIN JR. and<br>LYNN C. MARTIN, | ) ) ) ) |  |
| Defendants. | ) ) |  |

### MEMORANDUM OF DECISION

Plaintiff Mary Maslar ("Maslar") commenced this adversary proceeding to determine (i) the validity, priority and extent of her lien against property owned by Joseph R. Martin Jr. ("Joseph") and Lynn C. Martin ("Lynn") (together, the "Debtors"); and (ii) the dischargeability of a civil contempt assessment entered against the Debtors by a state court. Now before the Court is the "[Debtors'] Motion for Summary Judgment, Pursuant to MLBR 7056-1 and MLBR 9029-3" (the "Motion for Summary Judgment").

1

I. FACTS AND TRAVEL OF THE CASE

The facts necessary to dispose of this matter have been stipulated by the parties or are otherwise free from material dispute.

The underlying story begins in 1996, but only becomes relevant in 2003. Between 1996 and 2003, Joseph and his parents (Joseph R. Martin, Sr. and Karen Martin ["Karen"]) effected various intra-family conveyances of some 13 acres of property located at 5 City View Boulevard, Westfield, Massachusetts (the "City View Property") for reasons best understood by them. By August 18, 2004, one of the 13 acres had been separated from the rest (the "Lone Acre"), and that Lone Acre was owned ½ by Karen and ½ by the Debtors as tenants by the entirety. On August 18, 2004, Karen conveyed her ½ interest in the Lone Acre to the Debtors (the "2004 Transfer"; the "Conveyed Property").

Approximately a year before the 2004 Transfer, however, Maslar had filed a complaint against Karen in the Commonwealth of Massachusetts District Court Department of the Trial Court, Westfield Division (the "Westfield District Court Action"). Maslar sought money damages from Karen on account of Karen's alleged failure to return a security deposit to Maslar. The deposit had been given in connection with a proposed sale of some of the acreage from Karen to Maslar, and the sale had failed to close.[1] Maslar believed she was entitled to a return of the deposit; Karen apparently disagreed. In early 2005, the Westfield District Court issued a money judgment against Karen and in favor of Maslar in the amount of $25,881.33.

---

[1] The proposed sale had not included the Lone Acre.

2

The money judgment remained unpaid and nothing apparently progressed until July of 2008, when Maslar filed a complaint in the Commonwealth of Massachusetts Superior Court Department of the Trial Court, Hampden Division (the "Superior Court") against Karen and the Debtors seeking a declaration that the 2004 Transfer had been fraudulent and should be set aside and declared void as against Maslar (the "Superior Court Action").  Maslar simultaneously filed a "Creditor's Motion for Ex Parte Approval of Attachment of Real Property" with respect to the City View Property.  Rather than authorize the attachment as requested, the Superior Court entered an Order prohibiting the Debtors from conveying, transferring, refinancing or in any other way "encumbrancing" the City View Property.

The Superior Court subsequently disposed of the case (it thought), after Karen and the Debtors failed to comply with their discovery obligations, by entering on July 30, 2009 an "Order and Judgment For Assessment of Damages and Equitable Relief" (the "Superior Court Judgment") in Maslar's favor. Pursuant to the Superior Court Judgment, the court (i) declared that the 2004 Transfer was fraudulent and must be set aside and declared void as against Maslar; (ii) ordered the Debtors to transfer to Karen the Conveyed Property; (iii) awarded Maslar costs in the amount of $770.42; and (iv) declared that its judgment and the aforementioned orders and award of costs would constitute a lien on the Lone Acre.[2]  The Debtors never sought review of that Superior Court

---

[2] The language of the Superior Court Judgment in this final respect was "[t]hat the judgment entered in this case and the aforementioned orders and award of costs is declared a lien on 5 City View Boulevard, Westfield, MA."  Notably, the court did not limit the reach of the lien to the Conveyed Property.

3

Judgment and it became final. Nevertheless, the Debtors did not comply with the Superior Court Judgment.

In March of 2010, Maslar filed a complaint for contempt with the Superior Court. By Order dated April 23, 2010, the Superior Court found the Debtors in contempt of the Superior Court Judgment, again ordered the Debtors to transfer the Conveyed Property to Karen (this time within 10 days) and awarded Maslar the costs and attorneys' fees she had incurred in bringing the contempt action, together with the additional sum of $100.00 per day for each additional day of delay from the newly imposed deadline for compliance (the "Contempt Order"). No review of that Order was sought. Nor was it liquidated.

On June 28, 2010, the Debtors filed a voluntary Chapter 7 petition with this Court. On their Schedule A—Real Property, the Debtors listed a fee simple interest in the City View Property. On their Schedule C—Exemptions, the Debtors claimed the City View Property as exempt, pursuant to Mass. Gen. Laws c. 188, § 1—the Massachusetts Homestead Statute.[3] And on their Schedule F—Creditors Holding Unsecured Nonpriority Claims, the Debtors listed Maslar's claims against them.

The first scheduled meeting of creditors under 11 U.S.C. § 341[4] was set for July 27, 2010. Objections to discharge and dischargeability were due by

---

[3] By way of this adversary proceeding, Maslar makes a limited objection to the Debtors' claimed exemption in the Conveyed Property. For the reasons explained below, that objection is moot.

[4] All references to the "Bankruptcy Code" or to Code sections are to the Bankruptcy Code unless otherwise specified, 11 U.S.C. §§ 101 et seq.; all references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

4

September 27, 2010.[5]  No timely objection having been filed, this Court granted the Debtors a bankruptcy discharge under § 524 on September 28, 2010.

On October 4, 2010, Maslar filed the instant adversary proceeding asking the Court to enter orders: (1) confirming the Superior Court Judgment; (2) declaring that Maslar has a valid claim and lien against the Conveyed Property; (3) declaring that the Debtors' homestead exemption does not apply to the Conveyed Property; (4) confirming the Contempt Order and declaring it non-dischargeable; or in the alternative (5) allowing Maslar to partition and sell the Conveyed Property.  On August 2, 2011, the Debtors filed a "Motion to Avoid Judicial Lien with Mary Maslar" in the main bankruptcy case.  Maslar promptly objected.[6]

The Debtors timely filed their Motion for Summary Judgment in this Adversary Proceeding and Maslar has opposed.  After conducting a hearing on the Debtors' motion and permitting further briefing by the parties, this Court took the matter under advisement.

---

[5] No objections to discharge or dischargeability (or motions seeking an extension of the deadline) were timely filed.

[6] A hearing on the Motion to Avoid and Maslar's objection thereto has been continued generally pending the outcome of this adversary proceeding.

II. POSITIONS OF THE PARTIES

The Debtors argue that the judgments and orders issued by the Superior Court are judicial liens subject to avoidance under § 522(f).[7] The judgments and orders issued by the Superior Court, they explain, "arose and grew from" a money judgment entered against Karen; such judgments are by definition, judicial liens. In response to Maslar's argument that the liens are equitable rather than judicial liens, the Debtors point to the language of the Superior Court Judgment, which "declare[s] a lien" on the City View Property and nowhere mentions or uses the words "equitable lien." Further, the Debtors argue that Maslar failed to satisfy the requirements of a reach and apply action, as the Debtors were not named defendants in the Westfield District Court Action and Maslar sought no injunction against them. As for the dischargeability of the Contempt Order, the Debtors cite to the Complaint where Maslar concedes she does not seek denial of the Debtors' discharge or the nondischargeability of any of the Debtors' debts. See Complaint ¶ 6. Accordingly, the Debtors maintain, Maslar's claims were properly listed on the Debtors' schedules and have been discharged.

Maslar counters that the lien status of the Superior Court judgments raise genuine issues of material fact to be determined by the Court. Maslar contends

---

[7] Section 522(f) provides in relevant part:
(1) . . . .the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
(A) a judicial lien . . .
11 U.S.C. § 522(f)(1)(A).

that the Superior Court judgments are equitable liens not subject to avoidance under § 522(f). In support of this contention, Maslar offers the following: (1) the Superior Court Judgment is entitled "Order and Judgment For Assessment of Damages And **Equitable Relief**"; and (2) her success in reaching and applying the City View Property by way of the Superior Court Action. Finally, Maslar argues that the Contempt Order is non-dischargeable, pursuant to § 523(a)(6).

III. DISCUSSION

### A. Summary Judgment Standard

Summary Judgment should be granted, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056(a) (incorporating Fed. R. Civ. P. 56). There appear here to be no genuine disputes of material fact.

### B. Property of the Estate

Pursuant to 11 U.S.C. § 541, a debtor's estate comprises "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

> The section is construed broadly, United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05 & n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) and the meaning of the quoted phrase is a matter of federal law; but the existence and extent of the debtor's *interest* is ordinarily a creature of state law.

In re The Ground Round, Inc., 482 F.3d 15, 17 (1st Cir. 2007) (citing Butner v.

United States, 440 U.S. 48, 54-55; 1 Queenan et. al., Chapter 11 Theory and Pratice § 9.07 (1994)).  At the threshold of this matter is whether the Conveyed Property is even property of the bankruptcy estate.  The "existence and extent" of the Debtors' interest in the City View Property is a "creature of state law."  Id. The Superior Court Judgment declared the 2004 Transfer "fraudulent" and ordered that it be "set aside and declared void as against [Maslar]."  No review of that Order was sought and it became final.  Accordingly, the doctrine of claim preclusion dictates that the Debtors' interest in the Conveyed Property cannot be resurrected here.[8]  Nor does the Superior Court Judgment simply disappear by ignoring its directives.  "With few exceptions, '[a] bankruptcy estate cannot succeed to a greater interest in property than the debtor held prior to bankruptcy.'"  In re The Ground Round, at 18 (quoting In re NTA, LLC, 380 F.3d

---

[8] "Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation on the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."  New Hampshire v. Maine, 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).
> Claim preclusion prevents the relitigation of all claims that a 'litigant had the opportunity and incentive to fully litigate ... in an earlier action.' In re Sonus Networks Inc., 499 F.3d 47, 56 (1st Cir. 2007). Massachusetts evaluates three elements under the doctrine of claim preclusion: '(1) the identity or privity of the parties to the present and prior actions; (2) identity of the cause[s] of action; and (3) a prior final judgment on the merits.' McDonough v. City of Quincy, 452 F.3d 8, 16 (1st Cir. 2006). When assessing the second element of claim preclusion, Massachusetts courts find '[c]auses of action [to be] identical if they derive [ ] from the same transaction or series of connected transactions.' Id. (citations ommitted).

Giragosian v. Ryan, 547 F.3d 59, 63 (1st Cir. 2008).  Here, the Debtors and Maslar are the same parties who participated in the Superior Court Action, the cause of action is the same (Maslar's claim that the 2004 Transfer is void) and the Superior Court Judgment became final on the merits. See In re Brennan, 275 B.R. 172, 176-177 (Bankr. D. Mass. 2002) (for the purposes of claim preclusion (*res judicata*) under Massachusetts law, a judgment by default is considered a judgment on the merits).

523, 528 (1st Cir. 2004); citing § 541(d)).

At the commencement of their bankruptcy case, the Debtors' bankruptcy estate included legal title to ½ of the Lone Acre. Pursuant to the Superior Court's Judgment, the remainder (the Conveyed Property) belongs to Karen. Section 522(f) relates only to property in which the debtor has an interest. Inasmuch as the Conveyed Property has been finally determined to be owned by Karen, § 522(f) is inapplicable. And for the same reason, the Debtors have no interest in which to claim an exemption under bankruptcy or nonbankruptcy law. Therefore, Maslar's request to determine the validity, priority and extent of Maslar's lien on the Conveyed Property is moot as is the appropriateness of her request that the Debtors' claimed exemption be denied.

**C.  The Nature of the Superior Court Lien on the Remainder of the City View Property**

Despite the fact that the Conveyed Property belongs to Karen and, therefore, § 522(f) does not apply, that is not the only property to which the lien of the Superior Court attached. Again, the language of the Superior Court Judgment was "[t]hat . . . the aforementioned orders *and award of costs* is declared a lien on 5 City View Boulevard, Westfield, MA" (emphasis supplied). Accordingly, the lien created by the Superior Court still attaches to that portion of the Lone Acre (1/2) to which the Debtors are entitled to retain, the Conveyed Property having been deemed returned to Karen. All that remains of the lien is, therefore, the award of costs in the Superior Court Judgment. That award was in

the amount of $770.42.[9]  The Debtors say that the lien is a judicial lien; Maslar says that the lien is an equitable lien, and, therefore, § 522(f) does not apply. The Debtors have the better of the argument.

The Code defines "judicial lien" to mean, "a lien obtained by judgment, levy, sequestration, or other legal or equitable proceeding." 11 U.S.C. § 101(36). The term "equitable lien," however, is nowhere defined in the Code.  In In re Morais, No. 09-42079, 2009 WL 3054059, *3 (Bankr. D. Mass. September 18, 2009), Judge Rosenthal defined "equitable lien" to mean,

> 'a charge upon specific property, entitling the holder of the lien to have the property applied in equity to the payment of his debt as against all other claimants of the property except purchasers for value without notice'

Morais, at *3 (quoting Ballentine v. Eaton, 297 Mass. 389, 8 N.E.2d 808, 809 (1937)), but noted a divergence of case law relative to whether an equitable lien is, by definition, a judicial lien.

In Massachusetts, equitable liens are established through actions to "reach and apply."  Reach and apply actions exist in two forms.

> Under Massachusetts law, creditors' actions to reach and apply a debtor's property may take either statutory or non-statutory form. Foster v. Evans, 384 Mass. 687, 691-92, 429 N.E.2d 995 (1981); Stockbridge v. Mixer, 215 Mass. 415, 417, 102 N.E. 646 (1913); J. Nolan and L. Sartorio, Equitable Remedies, §§ 381-388, pp. 514-534 (West 1993 & Supp. 1995).  However, the plaintiff in a non-statutory action to reach and apply must be a judgment creditor.

In re Osgood, 203 B.R. 865, 869 (Bankr. D. Mass. 1997).  A statutory action to reach and apply

> permits the plaintiff to obtain in a single action both an adjudication

---

[9] The Superior Court did not impose a similar lien with respect to the sanctions set forth in the Contempt Order.

10

of the debtor's liability on the underlying claim, as well as equitable orders securing the debtor's property during the action and applying that property to pay the resulting judgment.

48 Mass. Prac. § 11:2. Non-statutory reach and apply actions, "can be used only after the plaintiff has reduced the claim to a judgment and has been unsuccessful in enforcing execution on that judgment." 48 Mass. Prac. § 11:39.

Statutory actions to reach and apply fraudulently conveyed property in Massachusetts are governed by M.G.L. c. 214, § 3(6).[10] Osgood, 203 B.R. at 869. Establishing an equitable lien under the Massachusetts statute requires *two steps*, rather than two actions as required at common law. First, "the plaintiff must file a complaint against both the principal defendant and any third party who possesses property of, or owes a debt to, the principal defendant." Id. With this first step the plaintiff must also establish the debt owed by the principal defendant to the plaintiff. See Hunter, 241 F.Supp.2d at 57. Second, "the plaintiff must seek an injunction restraining the debtor or a third party from disposing of property which the plaintiff intends to reach and apply in satisfaction of its claim." Id. Once the plaintiff has completed these two steps, the plaintiff secures her equitable lien. And Maslar did just that. In accordance with the first step, Maslar named Karen as principal defendant and the Debtors as third party defendants in

---

[10] M.G. L. c. 214, § 3 provides in relevant part the following:
> The supreme judicial and superior courts shall have original and concurrent jurisdiction of the following cases:
> (6) Acts by creditors to reach and apply, in payment of debt, any property, right, title or interest, legal or equitable, of a debtor, within or without the commonwealth, which cannot be reached to be attached or taken on execution although the property sought to be reached and applied is in the possession or control of the debtor independently of any other person or cannot be reached an applied until a further time or is of uncertain value.

Osgood, at n. 4 (quoting M.G.L. c. 214, § 3(6)).

11

the Superior Court action. In addition, the complaint itself established the debt owing to Maslar from Karen. Maslar successfully took the second step when she contemporaneously sought and received a temporary restraining order against Karen and the Debtors as to the City View Property.

While the intracacies of equitable liens is of some academic interest - as is whether equitable liens are, by their nature, judicial liens as having been created by a court - their applicability is not here relevant. The lien obtained by Maslar was not described by the Superior Court as an equitable lien, nor did it arise by dint of the Superior Court making right the fraudulent conveyance. The award of costs was instead the outcome of Maslar's having been successful as the plaintiff in the Superior Court Action, a common award to the winning party. It was by every definition a judicial lien - "a lien obtained by judgment, levy, sequestration, or other legal or equitable proceeding."[11] § 101(36).

### D. The Dischargeablity of the Contempt Sanctions

Finally, Maslar requests that the sanctions ordered by the Superior Court in its Contempt Order be deemed nondischargeable under § 523(a)(6).[12] The Court declines to do for two separate reasons. First, Maslar is too late.

Section 523(c)(1) provides that,

---

[11] For these reasons, the Court need not reach the question of whether an equitable lien is itself a form of judicial lien and, if so, whether that is always the case.

[12] Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

> [e]xcept as provided in subsection (a)(3)(B)[13] of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

11 U.S.C. 523(c)(1). Pursuant to Fed. R. Bankr. P. 4007(c), an objection to the dischargeability of a claim under § 523(c)(1) must be filed within 60 days after the first date set for the § 341 meeting.

The first date set for the § 341 meeting was July 27, 2010. Maslar commenced this adversary proceeding on the 69th day after the first scheduled meeting (nine days late) and never requested an extension of that deadline.

And second, in her Complaint, Maslar expressly stated that she was not asserting in the adversary proceeding any objection to the Debtors' discharge or the dischargeability of her claim. See Complaint ¶ 6. Under the circumstances, the Court must deem it waived.

IV. CONCLUSION

For the foregoing reasons, this Court finds and rules that the Debtors' Motion for Summary Judgment must be:

1. DENIED and summary judgment must be GRANTED to Maslar, insofar as the Court determines that the Debtors have no interest in the

---

[13] Section 523(a)(3)(B) is here inapplicable. The Debtors listed Maslar as a creditor and properly scheduled her claims. On July 4, 2010, Maslar was sent notice by first class mail of the Debtors' bankruptcy case in time for timely filing a request to determine the dischargeability of debts owing to her. See 11 U.S.C. § 523(a)(3)(B).

13

  Conveyed Property and rules Maslar's objection to the Debtor's exemption in the Conveyed Property accordingly moot;[14][15] and

2. GRANTED insofar as the Court deems Maslar's remaining claims to have been discharged, save only the award of costs in the Superior Court Judgment, which the Court rules is the subject of a judicial lien on the Debtors' ½ interest in the Lone Acre.

An order consistent with this Memorandum shall issue accordingly.

DATED: April 12, 2012      By the Court,

*[signature]*

              Henry J. Boroff
              United States Bankruptcy Judge

---

[14] Although untimely for these purposes under Fed. R. Bankr. P. 4003(b)(1) (the adversary proceeding raising the objection having been filed more than 30 days after the § 341 meeting was concluded), the objection could have been raised at a hearing on the Debtors' request for avoidance of the lien under § 522(f) (See Fed. R. Bankr. P. 4003(d)). However, the Court has ruled that the Debtors have no interest in the Conveyed Property and, therefore, the Debtors have no interest therein to exempt.

[15] Where only one party requests summary judgment, the Court may *sua sponte* grant summary judgment to the non-moving party if "(1) the case [is] sufficiently advanced in terms of pretrial discovery for the summary judgment target to know what evidence likely can be mustered, and (2) the target [has] received appropriate notice." Rogan v. Menino, 175 F.3d 75, 79 (1st Cir.1999); Berkovitz v. HBO, Inc., 89 F.3d 24, 29 (1st Cir.1996); Ostrander v. Motta (In re Motta), 423 B.R. 393, 405 n.5 (Bankr. D. Mass. 2010); A.J. Rinella & Co., Inc. v. Bartlett (In re Bartlett), 367 B.R. 21, 25–26 (Bankr. D. Mass. 2007). These conditions are satisfied. There are no factual disputes and the issue is one of law which both the Debtors and Maslar have addressed in connection with the Debtors' Motion for Summary Judgment.